IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Allen A. Bosch,<br><br>    Plaintiff,<br><br>v.<br><br>Red River Valley & Western Railroad Company, a corporation,<br><br>    Defendant. | Civil Action No. 3:08-cv-101<br><br><br>**RED RIVER VALLEY & WESTERN RAILROAD COMPANY'S TRIAL MEMORANDUM** |

    The Red River Valley & Western Railroad Company ("RRV&W") is a North Dakota based railroad headquartered in Wahpeton. It has been in operation since 1987. It has a rail yard located in Breckenridge, Minnesota.

    Plaintiff Allen Bosch was employed by the RRV&W at its start up in 1987 as a train service employee. He has served as a conductor, switchman, and engineer during his history of employment with the RRV&W.

    On February 28, 2007, Plaintiff Bosch was working in the rail yard of the RRV&W in Breckenridge, Minnesota. He began work at 1:00 p.m. and was assigned by Assistant Yard Foreman Curt Goodman to work with Josh Hanson, Engineer, and Rod Ernst, Conductor/Switchman, to do switching of various cars that afternoon and evening. The rail yard in Breckenridge has 14 tracks and covers approximately 80 acres.

    February 28, 2007 was a snowy day. The temperature was in the 20s. It snowed on and off during the day and into the evening, accumulating approximately 5 to 7 inches of snow.

At around 11:00 p.m., as the crew neared the end of its shift, there was a final job briefing among Mr. Goodman, Mr. Ernst and Mr. Bosch.  Mr. Hanson listened over the radio.  The three of them discussed the final movement of the day.  While there is some disparity among them over precise instructions, the essential facts are that Mr. Goodman was going to the car shop to await the final movement.  There was a 10 car consist with 2 locomotives operated by Mr. Hanson.  Mr. Bosch was to ride the train down what is known as the drill track.  Bosch was to align the switches along the route so that the train could then proceed down the number 14 track into the car shop.  (Attached hereto is a hand drawn map of the area for purposes of the court's orientation).  Mr. Bosch had to throw what is known as the "drill switch" and then the "14 switch".  Thereafter, the train would then advance westerly down the 14 track to the car shop.

While Mr. Hanson and Mr. Bosch went down the drill track, Mr. Ernst went to an area known as the yard crossing.  He was to inspect the track in that area to make sure that there was no impacted ice from motor vehicles going across the yard crossing.  Ice can cause derailments and that is the purpose for that inspection.

Among the disparities in testimony, Mr. Bosch places Mr. Ernst at different locations than what Mr. Ernst will testify Mr. Bosch has Mr. Ernst near the 14 switch while Mr. Bosch is there and also further east of that at what is known as the Sigco crossing near some grain elevators.  Mr. Bosch also has Mr. Ernst in a pickup truck during this time.  He likely will indicate that Mr. Ernst went west in the pickup truck to a point west of the yard crossing near a switch with number 12 track just before the car shop.  Mr. Ernst, on the other hand, will state that all during this time he was at the yard crossing and not in a truck.  This is an issue of factual dispute to be resolved by the jury.

As the train came down the drill track onto the 14 track, Mr. Hanson pulled it into the area where there are elevators to the east of the number 14 switch. Mr. Hanson stops in the elevator area which would place the final car of his train just beyond the 14 switch.

Railcars are approximately 60 feet long. The yard locomotives are approximately 60 feet each resulting in a train consisting of approximately 720 feet.

Mr. Bosch's testimony also will conflict with that of Mr. Hanson. He places Mr. Hanson further east on the tracks beyond what is known as the Sigco crossing. This would be another 250 – 300 feet east of where Mr. Hanson's description of events will place the train. This is another area of factual dispute for resolution by the jury.

After the train had stopped on the 14 track and after Mr. Bosch had aligned the 14 switch for the final movement, Mr. Bosch walked south from the 14 switch across the drill track. Mr. Bosch has indicated he was going to walk back to the drill switch to throw it.

Mr. Bosch claims that he gave a radio instruction that he was in the clear. He then handed the movement over to Mr. Ernst to control. Mr. Ernst gave instruction to Engineer Hanson to take the train 10 cars to the crossing.

Mr. Bosch's testimony varies somewhat from that of Mr. Ernst as to the instruction. That will be a jury issue to resolve.

Prior to the train commencing its movement, Mr. Bosch began walking. He walked back across the drill track and then forward to the drill switch. (See document 1075 which has an approximate description of Mr. Bosch's path.) (Also, see attached Exhibit 1A which has a mark "1" where Mr. Bosch puts himself when he had radio contact with Mr. Ernst regarding the movement of the train.)

As Mr. Bosch crossed the drill track and started to walk westward towards the drill switch, he drifted towards the number 14 track. The number 14 track was covered with snow. Mr. Bosch had a lantern and could see well in front of him. The drill track was visible because the train had just come down it and had cut the flange. Mr. Bosch also could see the drill switch from his point of view. Additionally, there are light poles on the north side of the 14 track to orient himself. He walked with his back to the train. At a point about 180 feet from the 14 switch along the number 14 track, Mr. Bosch was struck from behind by the train.

Mr. Ernst saw the lantern go down and instructed Mr. Hanson to stop the train.

There is a factual dispute over the distance that the train traveled prior to the point of impact. Mr. Bosch has the train traveling a considerably longer distance than does the RRV&W. The extra distance, if Mr. Bosch is to be believed, would violate radio rules regarding when a movement is suppose to stop. Mr. Hanson's testimony of where he was when the train began its movement and the evidence is on point of impact (along with Mr. Ernst's instructions) results in no violation of radio rules prior to impact. This will be a jury issue.

Mr. Bosch claims the yard had inadequate lighting. RRV&W asserts that the lighting in the yard was adequate and fulfilled its duties. This is another issue for the jury.

Mr. Hanson will indicate that, at the point of the impact, he looked at his speedometer and indicated approximately 7 mph. It is unknown if the speedometer was accurate as speedometers vary plus or minus 3 mph. Even if that is the speed, there is no evidence to indicate the distance for which the train was actually traveling at 7 mph. The

yard's speed limit is 5 mph.  It is unclear if Plaintiff claims speed was a proximate cause of the accident.  If so, Defendant will challenge this as speculative.

Mr. Bosch has alleged that Mr. Ernst was not protecting the point of the movement adequately, thereby resulting in his being struck by the train.  The RRV&W alleges Mr. Bosch did not act in accordance with work rules and reasonable procedure, thereby putting himself in harm's way and causing his injuries.  These are issues for the jury.

Mr. Bosch suffered a severe fracture to his lower right leg.  The injuries that he suffered have prevented him from returning to train service and employment at the RRV&W.

The RRV&W maintained Mr. Bosch on the payroll through February 2008 when, at that time, he had indicated, as per his doctor, he was not returning to work.

Mr. Bosch, to the knowledge of the RRV&W, has done nothing to seek reemployment or retraining.  He is an educated and skilled individual and has work experience prior to working for the railroad.  Evidence will be presented through a vocational rehabilitation consultant, Richard Van Wagner, regarding his employability in the Fargo area.

Mr. Bosch (dob 2/12/50) would be eligible for railroad retirement disability at age 62 and he has admitted that he had previously advised people that he would retire at that age.  He now claims age 67 as his anticipated retirement age.  His wage loss and failure to mitigate his damages will be an issue for the jury to resolve.

## **LEGAL DISCUSSION**

### 1.     **Plaintiff is not entitled to recover under FELA.**

To prevail on his FELA claims, Plaintiff bears the burden of proving that the workplace was in fact unsafe, and the Plaintiff's prima facie case under the FELA must include all the same elements as are found in a common law negligence action. *Inman v. Baltimore & Ohio R.R. Co.*, 361 U.S. 138, 140 (1959); *Davis v. Burlington Northern, Inc.*, 541 F.2d 182, 185 (8th Cir. 1976), cert. denied, 429 U.S. 1002 (1976). FELA is not a workers' compensation statute -- proven railroad negligence is a prerequisite to any imposition of liability. *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 32 (1944); *Davis*, 541 F.2d at 185; *Soto v. Southern Pacific Trans. Co.,* 644 F.2d 1147 (5th Cir. 1981); *Chicago, Rock Island & Pacific R. Co. v. Lint*, 217 F.2d 279 (8th Cir 1954) (FELA liability arises from proven negligence, not injury). FELA also does not make the railroad the insurer of its employees' safety. *Wilkerson v. McCarthy*, 336 U.S. 53 (1949); *Terminal Railroad Assn. v. Howell*, 165 F.2d 135, 138 (8th Cir. 1948); *Chicago St. P., M. O. R. Co. v. Arnold*, 160 F.2d 1002, 1006 (8th Cir. 1947). Instead, the burden remains with the employee to demonstrate that the railroad breached a duty of care. *Peyton v. St. Louis Southwestern Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992). Therefore, the fundamental inquiry in case at bar, as in FELA actions in general, is whether the railroad used ordinary care on the day in question, i.e., whether the railroad used "the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition." Id.; *Baez v. Southern Pacific R.R. Co.*, 210 Cal. App. 2d 714, 717 (Cal. Ct. App. 1962); *Tiller v. Atlantic Coastline R. Co.* , 318 U.S. 54, 67 (1943). The railroad has no duty "to eliminate all risks in the workplace; it is only obligated to eliminate unreasonable risks." *Tobin v. Nat'l R.R. Pas. Corp.*, 677 F. Supp. 674, 675  (D.

Mass. 1988).  The fact that there may have been safer alternative methods of working or that a danger may have been eliminated by performing work in a different manner does not necessarily indicate a lack of ordinary care in the methods actually used.  *Chicago, Rock Island & Pacific R.R. Co. v. Lint*, 217 F.2d 279, 282-83 (8th Cir. 1954); *Taylor v. Illinois Central Railroad Co.*, 8 F.3d 584, 586 (7th Cir. 1993); *Stillman v. Norfolk Western Ry. Co.*, 811 F.2d 834, 838 (4th Cir. 1987).  Establishing negligence alone is not sufficient to recover under FELA.  Rather, the negligence complained of must be the proximate cause of the injury.  *Atchison, Topeka & Santa Fe Ry. Co. v. Toops*, 281 U.S. 351 (1930).  Mere proof that the workplace is "dangerous" or a difficult place to work does not make the railroad liable without proof of causal negligence.  *Baez v. Southern Pacific RR Co.*, 210 Cal. App. 2d 714 (1962).  Foreseeability is an essential ingredient of negligence under the Act.  *Nivens v. St. Louis S.W. R.R. Co.*, 425 F.2d 114 (5th Cir. 1970).  Whether an injury was foreseeable must be determined based on "what should have been anticipated and not merely what happened."  *Taylor v. Missouri Pacific R.R. Co.*, 510 S.W. 2d 735 (Mo. App. 1974).

Finally, an employee's contributory negligence operates to diminish (but not bar) any recovery in proportion to the amount of that employee's negligence.  45 U.S.C. § 53.  FELA is pure comparative negligent statute.  Thus, theoretically, the employee could be 99% at fault and the railroad 1% at fault and the employee would recover 1% of his damages.  There is a duty placed upon the employee to exercise reasonable and ordinary care for his own safety under FELA.  *Kurn v. Stanfield*, 111 F.2d 469 (8th Cir. 1940); *Atlantic Coast Co. v. Dixon*, 189 F.2d (5th Cir. 1951); cert. denied, 342 U.S. 831 (1951).  A railroad is not negligent for failing to anticipate lack of care on the part of an injured employee.  *McGivern v. Northern Pacific Ry. Co.*, 132 F.2d 213 (8th Cir. 1942).

The essential facts of this case are that Mr. Bosch claims to have been injured on February 28, 2007 in Breckenridge, Minnesota, as described. The facts as described above provide jury issues for determination facts relating to the legal theories propounded by Plaintiff.

**2.    Evidentiary Issues.**

Defendant has brought a motion in limine regarding the admissibility of the AREMA standards and a study in an opinion survey by the Federal Railroad Administration. Those are briefed separately.

Additionally, Defendant anticipates there to be an evidentiary issue regarding the purported speed of the train at the time of the accident. As noted above, it is unknown if, for sure, the train was going 7 mph. More to the point, it unknown for what distance the train would have been traveling at such a possible speed. One of Plaintiff's experts is expected to testify the speed was a factor in the accident. Defendant asserts that this is wholly speculative and is inadmissible under FRE Rules 401, 403 and 703.

Dated: June 7, 2010                                FELHABER, LARSON, FENLON & VOGT, P.A.

                                                             By   s/ Robert L. Bach
                                                                    Robert L. Bach, ND# 06512
                                                                    Patricia R. Monson, ND# 03564
                                                             220 South Sixth Street, Suite 2200
                                                             Minneapolis, MN 55402
                                                             (612) 339-6321
                                                             ATTORNEYS FOR DEFENDANT RRV&W