IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

ALLEN A. BOSCH,

   Plaintiff,

vs.

RED RIVER VALLEY & WESTERN
RAILROAD COMPANY, a corporation,

   Defendant.

CIVIL ACTION NO. 3:08-cv-00101-RRE-KKK

**PLAINTIFF'S TRIAL BRIEF**

## INTRODUCTION

Plaintiff, Allen A. Bosch, brings this action under the Federal Employers' Liability Act, ("FELA" or "the Act"), 45 U.S.C. §§ 51-60, to recover damages for injuries he suffered on February 28, 2007 while working as a trainman/switchman for Defendant. He was injured when he was struck by a railcar during switching operations during a snow storm at Defendant's yards in Breckenridge, Minnesota. Plaintiff's lawsuit is predicated on Defendant's violation of the FELA when it breached its non-delegable duty to provide him with a reasonably safe place to work. Plaintiff's lawsuit also includes Defendant's violation of 49 C.F.R. § 240.49, a Federal Railroad Adminstration (FRA) regulation. A violation of the FRA regulation establishes that Defendant was negligent *per se* and precludes Defendant from asserting that Plaintiff was contributorily negligent. 45 U.S.C. § 54a. Plaintiff respectfully submits this Trial Brief summarizing evidence to be presented at trial, and the applicable law.

## FACTS

Plaintiff is 60 years old, a high school graduate, and has been employed by Defendant

since July 19, 1987. Plaintiff suffered significant and permanent injuries to his right lower extremity when he was struck from behind by a railcar during switching operations at Defendant's yards in Breckenridge, Minnesota on February 28, 2007.

On the day in question, Plaintiff was working as a trainman/switchman with a four-person crew. The incident took place at night. An ongoing snow storm piled snow high over the tops of the rails of the tracks in the yard (the rails were covered by two or more inches of snow). The rails were indistinguishable from the ground except where the car wheels had cut through. The forecast was for more snow until the next morning.

As previously mentioned, Plaintiff was part of a four-person switching crew. The crew's last job for the night was to shove cars into a track leading into the car shop. This required the crew to clean out switches not previously used that night and traverse track that was completely covered with snow. Under normal operations, the crossing would be cleared of snow and ice and switches cleared of snow and ice by the maintenance of way crews. However, despite the weather forecast for heavy snowfall, Defendant assigned a minimal maintenance of way force to maintain the switches and crossings in the yard. So, in essence, the railroad cut back their track maintenance crews due to the weather forecast but continued their full switching jobs with their train crews. As a consequence, the switches were full of snow and the crossings were packed with ice and snow from previous days of neglect while the new snow fell on top. The yard tracks were covered with fresh snow and it was impossible to tell where the tracks were located.

Plaintiff was forced to take on the additional duties of the maintenance of way crew to try to keep the switches clean. Meanwhile, a co-worker was forced to deal with packed snow at the crossing which, if not watched closely during a crossing, could cause cars to derail. The foreman

was in the car shop over a thousand feet away from the movement. Plaintiff directed a movement past the switch and the locomotive disappeared into the dark beyond a nearby elevator. Plaintiff proceeded to clean the switch with a power blower because he had previously sustained a back injury while working for Defendant and he could not use a shovel. After cleaning the switch, he turned the control of the cars over to his fellow crew member for the movement into the track. The engineer was given a come-ahead order of 10 cars. The FRA regulation only allows him to move five cars without getting another instruction. He moved six cars and was moving in excess of the permitted speed when he struck Plaintiff. Plaintiff was struck without warning because the crew member who gave the go-ahead instruction did not protect the movement by riding on the point or walking alongside the movement. Instead, he was at the crossing approximately 500 feet away allegedly because he had to watch the crossing as the cars came across to monitor the possible derailment due to the built-up ice and snow. At the same time, the tracks were covered with snow, it was dark and unlit, and cars were coming faster and farther than expected. Plaintiff was walking away from the switch to perform other work but because of the snow covering the tracks, he walked into an area where he was unknowingly fouling the track. He was struck from behind and knocked to the ground sustaining the crushing injury to his leg.

    As a result of the incident, Plaintiff suffered significant, permanent injuries to his right leg. The railcar struck him from behind, knocking him to the ground and trapping his leg between the car and ground, twisting and crushing the tibia and fibula. Emergency surgery was performed to try to save his leg. The surgeon utilized both internal and external fixation devices to attempt to bring the crushed bone into alignment. Plaintiff suffered months and months of immobility, therapy and rehabilitation. He suffered permanent injury to the peroneal nerve and

has permanent foot drop. His leg is bent, deformed and weak, and causes him to walk with a permanent limp. He will likely require future surgeries to his knee, including knee replacement, and will have hip and back problems in the future as well. Plaintiff's injuries have adversely affected every aspect of his life, including ending his railroad career.

Plaintiff will offer expert testimony related to his future medical damages through Linda Graham, a life care planner, who projects these damages to be in excess of $230,000. Plaintiff will also offer the testimony of Dr. Karl Egge, an economist, who will testify that Plaintiff's future economic damages are in excess of $500,000.

## FACT ISSUES

The fact issues involved in Plaintiff's lawsuit are those common to FELA and negligence: (a) was Defendant's negligent, (b) did Defendant's negligence cause, in whole or in part, Plaintiff's injuries, and (c) the nature and extent of Plaintiff's injuries and the resulting damages.

With respect to Defendant's violation of 49 C.F.R. § 240.49, the issues include: (a) did Defendant violate the regulation, (b) did Defendant's violation cause, in whole or in part, Plaintiff's injuries, and (c) the nature and extent of Plaintiff's injuries and resulting damages.

## LAW

### I. OVERVIEW OF THE LAW UNDER THE FEDERAL EMPLOYERS' LIABILITY ACT.

#### A. Introduction.

The Federal Employers' Liability Act is a congressionally mandated statutory scheme that provides injured railroad workers with a remedy so they can be fully compensated for job-related injuries suffered in the course and scope of their employment with a railroad carrier. *See* 45

U.S.C. § 51. The Act is remedial in nature, and has been interpreted consistently with the broad remedial purposes Congress intended to achieve. The United States Supreme Court recognized that the purpose of the Act was "designed to put on the railroad industry some of the cost for the legs, eyes, arms and lives which it consumed in its operation." *Wilkerson v. McCarthy*, 69 S.Ct. 413 at 420 (1949); *Sinkler v. Missouri Pacific RR. Co.*, 358 U.S. 326 (1958); *See also, Lavender v. Kurn*, 327 U.S. 645 (1946); *Rogers v. Missouri Pacific RR. Co.*, 352 U.S. 500 (1957); *Shenker v. Baltimore & Ohio RR. Co.*, 374 U.S. 1 (1963). Thus, due to the remedial nature of the Act, the controlling law under the FELA is substantially different than common law negligence. *Bailey v. Central Vermont Rwy.*, 319 U.S. 350 (1943). These departures from common law and the distinctive features of the Act are discussed below.

**B.    Federal Law Controls.**

In actions arising under the FELA, it has been long settled that the rights and obligations of the parties are governed exclusively by the terms of the Act and federal case law construing the Act. *Chicago, Milwaukee & St. Paul Rwy. v. Coogan*, 271 U.S. 472, 474 (1926). This established principle has been reiterated by the U.S. Supreme Court and remains the law. *Chesapeake & Ohio Rwy. Co. v. Kuhn*, 284 U.S. 44, 46-47 (1931); *Bailey v. Central Vermont Rwy.*, 319 U.S. 350, 352 (1943); *Norfolk & Western Rwy. Co. v. Liepelt*, 444 U.S. 490, 493 (1980).

**C.    Liability Under The Act.**

1.    <u>General Overview.</u>

The cornerstone of the FELA is found in Section 1 of the Act, which establishes a railroad's liability for injuries caused by its negligence. Specifically, this section provides:

5

> Every common carrier by railroad while engaging in commerce between any of the several states or territories, or between the District of Columbia or any of the states and territories and any foreign nation or nations, **shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier or by reason of any defect or insufficiency, due to its negligence,** in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
>
> Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter. (emphasis added).

45 U.S.C. § 51 (1908) as amended (1939).

In the present case, there is no dispute that Defendant was engaged in interstate commerce at the time of Plaintiff's injury, and that all or part of Plaintiff's job duties were in the furtherance of the railroad's business of interstate commerce. Accordingly, the main issue to be determined is whether Plaintiff's injury was caused "in whole or in part" by Defendant's negligence and its violation of the FRA regulation.

2.   Non-delegable duty and specific duties under the Act.

It is widely recognized that "the standard of negligence under the FELA is substantially more liberal than that governing ordinary common law negligence actions." *Lindauer v. New York Central RR. Co.*, 408 F.2d 638, 640 (2nd Cir. 1969). Under the FELA a railroad has a **non-delegable duty to provide its employees with a safe place to work**. *Bailey v. Central Vermont Rwy.*, 319 U.S. 350, 353 (1953)(emphasis added). The Act statutorily imposes a higher standard of care that is in addition to the more general duty of care which the law requires of all persons. *See Kerman v. American Dredging Co.*, 355 U.S. 426, 438-39 (1958); *See also Ragsdell v.*

*Southern Pacific Trans. Co.*, 688 F.2d 1281, 1283 (9th Cir. 1982); W. Prosser & W. Keeton, *The Law of Torts*, § 33 at pp. 201-03 (5th ed. 1984). A railroad is not relieved from its duty of care by the fact that an employee's work at a particular place is fleeting or infrequent. *Bailey, supra.*

From the above-general principles, more specific duties have developed relating to a railroad's duty to provide a safe place to work which are well beyond those imposed upon employers at common law, and these duties are integral to the FELA. Specific duties that have been adopted include the duty to inspect areas where its employees work and equipment its employees must use in order to discover dangerous and hazardous conditions, and then take precautions to remedy the dangerous and hazardous condition, *Williams v. Atlantic Coat Line RR. Co.*, 190 F.2d 744, 748 (5th Cir. 1951); *Cazad v. Chesapeake & Ohio Rwy Co.*, 622 F.2d 72, 75 (4th Cir. 1980); the duty to supply safe and suitable tools, instruments and equipment to its employees, *Chicago & North Western Rwy. Co. v. Bower*, 241 U.S. 470, 473-74 (1916); *Chicago & North Western Rwy. Co. v. Rieger*, 326 F.2d 329, 333 (8th Cir. 1965); the duty to adopt and enforce reasonably safe methods and procedures, *Davis v. Virginia Rwy. Co.*, 361 U.S. 354, 355-356, (1960); *Blair v. Baltimore & Ohio R.R. Co.*, 323 U.S. 600, 604 (1945); *Ybarra v. Burlington Northern, Inc.*, 689 F.2d 147, 150 (8th Cir. 1982); the duty to provide sufficient help, *Davis v. Virginia Ry. Co.*, 361 U.S. 354, 355-56 (1960); and the duty to warn employees of unsafe working conditions, *Wattigney v. Southern Pacific Co.*, 411 F.2d 854, 856 (8th Cir. 1969);.

Courts have uniformly adopted a liberal standard of construction in order to facilitate Congress' broad remedial objectives under the FELA when determining the extent of a railroad's duty of care owed to its employees. *See Urie v. Thompson*, 337 U.S. 163,180-81 (1949); *see also Ackley v. Chicago & Northwestern Trans. Co.*, 820 F.2d 263, 266-67 (8th Cir. 1987).

7

The law is clear that regardless of where the plaintiff was working at the time of injury, a railroad has a non-delegable duty of care to provide and maintain a safe place in which to work. Whether a railroad properly discharges its duty must be tested with a view towards the hazard involved, the place where the work is to be performed, and the machinery or equipment being used. *Padgett v. Southern Rwy. Co.*, 396 F.2d 303, 306 (6th Cir. 1968). Just as important, actual notice of danger or condition is not a condition precedent to a finding of negligence, constructive notice will suffice. *Sano v. Pennsylvania RR. Co.*, 282 F.2d 936 (3rd Cir. 1960).

3.   Causation under the Act.

The rule governing the causal connection between a railroad's negligence and an injury or death to its employee in actions arising under the FELA differs substantially from the general common law concept of proximate cause. *Rogers v. Missouri Pacific RR. Co.*, 352 U.S. 500 (1957). As stated in the landmark case of *Rogers v. Missouri Pacific RR. Co.*, the United States Supreme Court articulated the following test for causation:

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter then, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. (footnotes and citations omitted).

352 U.S. at 506-07.

This departure of causation in FELA cases from the causation of the common law concept of proximate cause articulated in *Rogers* is recognized and contained in the federal pattern jury instructions:

> For purposes of this action, damage is said to be caused or contributed by an act or failure to act when it appears from a preponderance of the evidence in the case that the act or omission played any part, no matter how small, in bringing about or actually causing the injury or damage.

3A O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, Section 155.40 (5th Ed. 2001)

    4.    <u>Foreseeability under the Act.</u>

In cases brought under the FELA, courts have uniformly taken an expansive view of the concept of foreseeability of harm. Under the FELA, an injured worker must show that it was reasonably foreseeable that they would suffer some type of harm as a result of the railroad's negligence. *Gallick v. Baltimore & Ohio RR. Co.*, 372 U.S. 108, 117 (1963). However, foreseeability of harm and foreseeability of a particular injury resulting from the railroad's negligence are two separate concepts. *Gottshall v. Consolidated Rail Corp.*, 988 F.2d 355, 377 (3rd Cir. 1993), *reversed and remanded on other grounds*, 114 S.Ct. 2396 (1994). The difference between foreseeability of harm, the concept that must be met under the FELA, and foreseeability of a particular injury was defined by the United States Supreme Court in *Gallick*:

> It is widely held that for a defendant to be held liable for consequential damages he need not foresee the particular consequences of his negligent acts: assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable. And we have no doubt that under a statute where a tortfeasor is liable for death or injuries in producing which his "negligence played any part, even the slightest" such a tortfeasor must compensate his victim for even the improbable or unexpectedly severe consequences of his wrongful act. (citations omitted).

*Id.* at 120-21. In other words, once the threshold tort liability is satisfied, a railroad is liable for all damages which flow from that negligence even if the damages and injuries are unexpectedly severe.

Relying on *Gallick*, the following test for foreseeability under the Act has been formulated:

> The test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person have foreseen that an injury might occur.

*Gottshall*, 988 F.2d at 377.

### D.   Permissible and Impermissible Defenses Under the Act.

#### 1.   General Overview.

Just like the many departures from the common law discussed above concerning liability of a railroad carrier, there are several unique departures from the common law concerning defenses that may be asserted by a defendant railroad. Under the Act, the fellow servant doctrine and assumption of risk have been abolished, and are impermissible defenses that may not be raised. Additionally, contributory negligence is applicable only under limited circumstances. The following sections discuss these unique departures from common law.

#### 2.   Abolition of Fellow Servant Doctrine.

The FELA was intended to abrogate the common law fellow servant doctrine, and to stimulate railroads to exercise great diligence for the safety of their employees. *Jamison v. Encarnacion*, 281 U.S. 635 (1930). Under the FELA, the negligence of a co-worker is placed upon the same basis as the negligence of the employer, and the employer is liable to his own employee for injuries resulting from the negligence of a fellow servant. *Chesapeake & Ohio Rwy. Co. v. Deatley*, 241 U.S. 310 (1916). It is immaterial whether the fellow servant whose negligence caused the injury was engaged in interstate commerce, provided the carrier was engaged in interstate commerce and the injured employee was employed by the carrier in such

commerce. *Central Vermont RR. Co. v. White*, 238 U.S. 507 (1915); *Illinois Central RR. Co. v. Skaggs*, 240 U.S. 66 (1916).

    3.    <u>Assumption of risk and contributory negligence under the Act.</u>

It is extremely important to keep in mind the difference between assumption of the risk and contributory negligence in a FELA action. Assumption of the risk is an impermissible defense under the Act. 45 U.S.C. § 54; *Tiller v. Atlantic Coastline RR. Co.*, 318 U.S. 54, 63 S.Ct. 444 (1943). Thus, a plaintiff's right to recover damages is not affected if his conduct is found to have constituted an assumption of the risk. *Koskorek v. Pennsylvania RR. Co.*, 318 F.2d 364, 367 (3rd Cir. 1963), *reh'g denied* (1963).

On the other hand, contributory negligence is applicable under limited circumstances in FELA actions. Section 3 of the Act provides that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." 45 U.S.C. § 53. Thus, an employee's contributory negligence does not bar recovery, but merely reduces a jury's award by an amount in proportion to the negligence apportioned to the employee. *Jamison v. Encarnacion*, 50 S.Ct. 440, 442 (1930); *Taylor v. Burlington Northern RR. Co.*, 787 F.2d 1309, 1314 (9th Cir. 1986).

The problem arises in FELA actions when a defendant railroad attempts to introduce evidence of assumption of the risk masquerading as contributory negligence. The Supreme Court recognized this danger in one of its first cases interpreting the 1939 amendment to the Act. *See Tiller, supra*. In the present case, this Court will need to carefully scrutinize the facts to make certain evidence of assumption of risk is not argued, or presented, as contributory negligence.

11

a.  <u>Distinguishing assumption of risk from contributory negligence in an FELA action.</u>

The United States Supreme Court has long recognized the importance of distinguishing the concepts of assumption of risk from contributory negligence in FELA actions. *Pryor v. Williams*, 254 U.S. 43 (1920); *Tiller v. Atlantic Coastline, supra*. The defenses are not interchangeable and the distinction is critical since one, but not the other, reduces Plaintiff's recovery. *Owens v. Union Pacific RR. Co.*, 319 U.S. 715, 724 (1943).

The Ninth Circuit succinctly captured the distinction between assumption of the risk and contributory negligence:

> At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. *See Prosser and Keeton on the Law of Torts* Sec. 68, at 480-81 (W.P. Keeton 5th ed. 1984). Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. *See, Id.* Sec. 65, at 451-452. Defenses once embraced substantially within the concept of assumption of risk are barred under the FELA and may not be revived in the form of contributory negligence. Where an act of alleged contributory negligence is but the practical counter part of assumption of risk, it does not constitute a defense. *Tiller*, 318 U.S. at 58, 63 S.Ct. at 446 . . . The employee who enters the workplace for a routine assignment in compliance with the orders and directions of his employer or its supervising agents, who by such entry incurs risks not extraordinary in scope, is not contributorily negligent, but rather is engaging in an assumption of risk.

*Taylor v. Burlington Northern RR. Co.*, 787 F.2d 1309, 1316 (9th Cir. 1986). Thus, the key in determining whether there is an assumption of the risk or contributory negligence on the part of a railroad employee is to analyze whether that employee was merely complying with his employer's orders and directions when performing his assigned job without adding any additional risk or danger.

As the party asserting contributory negligence, Defendant must produce sufficient

evidence to submit the issue to the jury. *See Wilson v. Burlington Northern, Inc.*, 670 F.2d 780, 782 (8th Cir. 1982)(a defendant is entitled to contributory negligence instruction if it produces evidence that the plaintiff failed to exercise reasonable care). As just discussed, Defendant does not meet this burden by offering evidence that amounts to Plaintiff's assuming the risk of his employment. In other words, Plaintiff discharging his job duties as required by his employment does not support a contributory negligence defense.

Nor does Defendant meet its burden by attempting to impeach Plaintiff's testimony. *Birchem v. Burlington Northern R.R. Co.*, 812 F.2d 1047, 1049 n. 4 (8th Cir. 1987). Indeed, "a [railroad] cannot rely solely on the credibility of the plaintiff's testimony to establish contributory negligence." *Id.* (citing *Borough v. Duluth, Missabe & Iron Range Rwy. Co.*, 762 F.2d 66, 69 (8th Cir. 1985)). Instead, BNSF "*must produce independent evidence of [plaintiff's] lack of due care.*" *Id.* (emphasis added).

Likewise, evidence of an employee's alleged violation of self-serving, general work rules does not support a defendant's contributory negligence defense, including evidence that Plaintiff was "empowered" to refuse to perform his assigned work. It is axiomatic that general rules, such as a worker must always take the safest course, redefines an employee's duty of care under the FELA. *See Wilson v. Burlington Northern, Inc.*, 670 F.2d at 782 (employees must exercise reasonable care when discharging their job duties).

The improper use of a self-serving work rules in support of a contributory negligence defense was considered by the Tenth Circuit in *Parra v. Atchison, Topeka & Santa Fe Rwy. Co.*, 787 F.2d 507 (10th Cir. 1986). The plaintiff in *Parra* was injured when he performed his assigned job of dragging 300 pound railroad ties. *Id.* at 508. The railroad offered into evidence

13

its safety rule which stated:

> Do not lift more than can be safely handled. When necessary, ask for help to lift heavy loads and avoid jerking or lifting from awkward positions. When lifting, have secure footing, bend knees and keep back straight, take firm hold of object and slowly straighten legs.

*Id*

The railroad offered a jury instruction that read in part "[i]f you find that plaintiff violated an applicable safety rule of defendant that this violation contributed in whole or in part to the accident, you may consider this violation as evidence of negligence on the part of the plaintiff . . . ." *Id*. The district court refused to give the instruction. *Id*.

On appeal from a favorable verdict for the plaintiff, the railroad argued that the district court erred when it refused to instruct the jury that a violation of its safety rule was evidence of contributory negligence. In rejecting the railroad's argument, the Tenth Circuit stated:

> *The critical inquiry in such cases is whether the rule itself is of a specific nature allowing plaintiff's actions to be evaluated objectively.* In this instance, Rule 191 tells Mr. Parra that he should not lift more than can be lifted "safely." *This is a good admonition but it is nothing more than that and it provides no standard which a jury could apply.* The evidence only affords defendant an instruction of the law of plaintiff's negligence as was given in this instance. The trial court properly denied the requested instruction.

*Id*. at 509 (emphasis added).

In the present case, the evidence will show that Plaintiff discharged his assigned duties by following the set procedures adopted by the railroad without adding any additional risk or danger. The risk of injury here was caused by the railroad's negligence.

### E. Liability when there is a regulatory violation.

It is well-established law that a violation of a FRA regulation, just like violations of

14

federal safety statutes,[1] establishes absolute liability on the part of a railroad. 45 U.S.C. § 54a; *see also Eckert v. Aliquippa and Southern RR. Co.*, 828 F.2d 183, 187 (3rd Cir. 1987)(violations of FRA regulations have the same legal effect as a violation of the Safety Appliance Act).

Accordingly, "the violation of a statute or regulation . . . automatically constitutes breach of the employer's duty and negligence *per se* and will result in liability if the violation contributed in fact to the plaintiff's injury." *Martinez v. Burlington Northern & Santa Fe Ry. Co.*, 276 F.Supp.2d 920, 923 (N.D.Ill. 2003)(quoting *Walden v. Illinois Central Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992)).

The significance of a violation of federal regulation is two-fold. First, a violation imposes absolute liability upon the offending Defendant railroad. *Urie v. Thompson*, 337 U.S. 163, 189 (1949); *Coleman v. Burlington Northern, Inc.*, 681 F2d 542, 544 (8th Cir. 1982). Instead of having to prove negligence, an employee must only prove that the railroad violated the safety statute, and that the violation caused the employee's injury. *Id.* A violation of the federal statutes and regulations is dependent on "the unlawful use of prohibited defective equipment," and "not from the position the employee may be in, or the work which he may be doing at the moment when he is injured." *Coray v. Southern Pacific Co.*, 335 U.S. 520, 523 (1949)(quoting *Brady v. Terminal RR. Assoc.*, 303 U.S. 10, 16 (1938)). The injured employee need only prove that the violation of the safety statute was a cause "in whole or in part" of his injuries. *Id.* at 524. Once an employee proves a violation, the railroad may not assert contributory negligence as a defense. 45 U.S.C. § 53. Nor may a railroad employer use "carefulness", "diligence" or "showing of care" as a defense to a violation of the safety statute. *Louisville & Jeffersonville*

---

1 The other federal safety regulations that are part of the FELA are the Safety Appliance Act (SAA), 49 U.S.C. §§ 20301-20306; and the Locomotive Inspection Act, 49 U.S.C. §§ 20701-20703.

*Bridge Co. v. U.S.*, 249 U.S. 534, 539 (1919); *O'Donnell*, 338 U.S. at 390; *Brady v. Terminal RR. Assoc.*, 303 U.S. 10, 15 (1938). Thus, a violation of the statutes or regulations that causes an employee's injury establishes absolute liability on the part of the railroad employer.

Second, because liability is absolute, a Defendant railroad may not assert contributory negligence as a defense. 456 U.S.C. §§53, 54a; *See Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506-07 (1957).

The specific regulation Defendant violated is 49 C.F.R. § 220.49, which provides:

> When radio communication is used in connection with the shoving, backing or pushing of a train, locomotive, car, or on-track equipment, the employee directing the movement shall specify the distance of the movement, and the movement shall stop in one-half the remaining distance unless additional instructions are received. If the instructions are not understood, the movement shall be stopped immediately and may not be resumed until the misunderstanding has been resolved, radio contact has been restored, or communication has been achieved by hand signals or other procedures in accordance with the operating rules of the railroad.

The evidence offered at trial will establish that the engineer was instructed to shove ten cars onto the track, and he failed to stop within half the distance, and in doing so, he struck Plaintiff.

### F.     Damages.

The measure of damages in a FELA action is governed by federal law. *Chesapeake & Ohio Railway Company v. Kelley*, 241 U.S. 485, 491 (1916), and recoverable damages include lost earnings and loss of earning capacity, *Wiles v. New York, C. St. L. Ry. Co.*, 283 F.2d 328 (3rd Cir. 1960) *cert. den.* 364 U.S. 900 (1960), pain and suffering, *Chesapeake & Ohio Railway Company v. Carnahan*, 241 U.S. 241 (1935), mental anguish, *Erie Railroad Company v. Collins*, 253 U.S. 77, 85-86 (1920), and medical expenses. *See generally*, DeParcq, *Litigation Under the*

*Federal Employers' Liability Act*, 11 Am. Jur. Trials Sections 36-43 (1966).

With respect to loss of future earning capacity, the fact that an injured employee may recover damages for loss of earning capacity, as opposed to lost wages, has been established under the FELA. *Id.* at 332. The central inquiry into a claim for loss of earning capacity is how the injuries and resulting disabilities and losses (i.e. job loss) will limit the plaintiff's economic horizons. *Id.* It therefore follows that railroad employees must be compensated for their loss of future earning capacity, even if they are earning more at the time of trial then at the time they were injured. *Id.*

Under the common law, "[i]mpairment to future earning capacity is measured by the reduction in the **value of the power to earn**, not the difference in earnings received for a specific occupation before and after an injury." 22 Am. Jur. 2d *Damages* § 142 (2003). The question central to Plaintiff's loss in an FELA claim is whether his "economic horizons have been limited by his injury." *Wiles*, 283 F.2d at 332.

The collateral source rule is applicable to actions tried under the Federal Employers' Liability Act. *Eichel v. New York Cent. R. Co.*, 375 U.S. 253 (1963). For this reason, evidence concerning Plaintiff's receipt of a disability pension under the Railroad Retirement Act is immaterial and is thus inadmissible to mitigate damages. *Caughman v. Washington Terminal Co.*, 345 F.2d 434 (1965); *Page v. St. Louis S. R. Co.*, 312 F.2d 84 (1963).

Like all other issues in a FELA case, the issue of damages is a federal question. *Chesapeake & Ohio Ry. Co. v. Kelley*, 241 U.S. 485, 491 (1916). It is axiomatic that the collateral source rule does not prohibit Plaintiff from informing the jury that the FELA is the exclusive remedy of injured railroad workers because they are not covered by workers'

compensation acts.

With respect to mitigation of damages, a plaintiff has the duty to mitigate his or her damages. *Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 593 (6th Cir. 1986)(citation omitted). But the defendant railroad has the burden of producing sufficient evidence to create a jury question on the issue of whether a plaintiff failed to mitigate damages. *Id.* (citation omitted). If the defendant fails to meet its burden of production, then it is error for a trial court to instruct and submit the issue to the jury. *Ahlf v. CSX Trans., Inc.*, 386 F.Supp.2d 83, 92 (N.D.N.Y. 2005)(citing *Jones v. Consolidated Rail Corp.*, 800 F.2d at 592).

Evidence that there are job positions available that are beyond a plaintiff's physical capabilities does not support a failure to mitigate defense. *See Wilson v. Union Pacific R.R. Co.*, 56 F.3d 1226, 1232 (10th Cir. 1995)(evidence that the plaintiff did not interview for a security guard position did not satisfy railroad's burden since he was physically unable to perform the job); *Schneider v. National R.R. Passenger Corp.*, 987 F.2d 132, 136-37 (2nd Cir. 1993)(evidence that the plaintiff did not accept a job offer by his employer and defendant did not satisfy burden since he was physically unable to perform the job); *Ahlf v. CSX Trans. Inc.*, 386 F.Supp. at 92 (evidence that the plaintiff could return to his prior work as an electrical engineer did not satisfy railroad's burden since evidence that he was physically unable to perform the job).

Nor does evidence that jobs are available that require a plaintiff to move away from his or her community and family support a failure to mitigate defense. *See Wagner v. Union Pacific R.R. Co.*, 11 Neb.App. 1, 31, 642 N.W.2d 821, 847 (2002)(trial court did not abuse its discretion when it excluded at trial the railroad's job posting outside the plaintiff's immediate community); *Coleman v. City of Omaha*, 714 F.2d 804, 808 (8th Cir. 1983)(reasonable effort to find an

18

alterative employment does not require a plaintiff to move away from his or her community); *Glass v. IDS Financial Service, Inc.*, 778 F.Supp. 1029, 1075 (D.Minn. 1991)(a plaintiff does not have to "relocate to a new community" to mitigate damages).

Last, evidence of job positions where there has been no bona fide offer of employment made before trial does not support a failure to mitigate defense. *See Zimmerman v. Montour R.R. Co.*, 191 F.Supp. 433, 434 (W.D.Pa. 1961), *aff'd*, 296 F.2d 97 (3rd Cir. 1962), *cert. denied*, 369 U.S. 828 (1962)(trial court properly excluded evidence that there was a custodial job available, which defendant revealed the existence of the job for the first time on the eve of trial); *Southern Pacific Trans.. Co. v. Fitzgerald*, 577 P.2d 1234, 1235 (Nev. 1978)(trial court properly excluded evidence of job offers by the railroad where it was unclear whether bona fide offers had been made); *Plourd v. Southern Pacific Trans. Co.*, 513 P.2d 1140, 1149 (Or. 1973)(trial court properly excluded evidence of job offers by the railroad where there was no evidence that offers were actually conveyed prior to trial).

## CONCLUSION

Applying the applicable law to the facts of the present case, Defendant is liable for Plaintiff's injuries suffered while employed as conductor/trainman for Defendant.

HUNEGS, LeNEAVE & KVAS, P.A.

Dated: June 7, 2007

s/Cortney S. LeNeave
Cortney S. LeNeave, MN ID 018424X
Attorneys for Plaintiff
900 Second Avenue South, Suite 1650
Minneapolis, Minnesota 55402
(612) 339-4511