IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

---

ALLEN A. BOSCH,

    Plaintiff,

vs.

RED RIVER VALLEY & WESTERN
RAILROAD COMPANY, a corporation,

    Defendant.

CIVIL ACTION NO. 3:08-cv-00101-RRE-KKK

**PLAINTIFF'S SUPPLEMENTAL TRIAL BRIEF**

---

## INTRODUCTION

Plaintiff's lawsuit is brought pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, where he seeks damages for severe and permanent injuries suffered on February 28, 2007 while working as a trainman for Defendant. As a result of the injuries, Plaintiff is not longer able to work at his occupation for Defendant. Accordingly, he applied for and was awarded an occupational disability by the U.S. Railroad Retirement Board (RRB), and he now receives an occupational disability benefits. The inadmissibility of the RRB benefits as a collateral source was discussed in Plaintiff's Trial Brief. Plaintiff respectfully offers this supplemental brief discussing that evidence of RRB benefits and early retirement are inadmissible at trial in a FELA action.

## ARGUMENT

**I. EVIDENCE CONCERNING PLAINTIFF'S RECEIPT OF BENEFITS FROM COLLATERAL SOURCES IS INADMISSIBLE AT TRIAL.**

Plaintiff seeks to preclude Defendant from referring to his receipt of collateral sources such as Sickness Benefits or Disability Annuity from RRB at trial under *Eichel v. New York*

*Cent. R. Co.*, 375 U.S. 253 (1963), a case where the U.S. Supreme Court made it absolutely clear that the receipt of such benefits is inadmissible at trial. Prior to the Supreme Court decision in *Eichel*, some Federal Courts allowed evidence concerning a disability pension to be admitted where the evidence was offered to show the extent and duration of plaintiff's injuries or to show plaintiff's motive for not returning to work. The U.S. Supreme Court expressly rejected these arguments holding that evidence of a disability pension is flatly inadmissible. While recognizing that the evidence may have some probative value, the court nevertheless concluded that "the likelihood of misuse by the jury clearly outweighed the value of the evidence." 375 U.S. at 255, 84 S.Ct. at 317. "It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact." 375 U.S. at 255 (citations omitted).

Since the decision in *Eichel*, courts have consistently rejected any attempt to limit its holding. For instance, railroads argue that *Eichel* should be limited and its holding that RRB benefits are a collateral source is merely *dicta*, which a trial court may ignore. However, a review of the case law reveals that the argument has gained very little traction. Instead, courts throughout the country have accepted *Eichel's* pronouncement. *Green v. Denver & Rio Grande Western R.R. Co.*, 59 F.3d 1029, 1033-34 (10th Cir. 1995), *cert. denied* 516 U.S. 1009 (1995); *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188, 200 (8th Cir. 1981), *cert. denied*, 455 U.S. 1000 (1982); *Reed v. Philadelphia, Bethlehem & New England R.R. Co.*, 939 F.2d 128, 134 (5th Cir. 1991); *Page v. St. Louis Southwestern. Ry., Co.*, 349 F.2d 820, 821-22 (5th Cir. 1965); *Sheehy v. Southern Pacific Trans. Co.*, 631 F.2d 649, 651-52 (9th Cir. 1980); *Caughman v. Washington Terminal Co.*, 345 F.2d 434, 435-36 (D. C. Cir. 1965).

The Eighth Circuit has specifically recognized *Eichel* when it held that a district court properly held that the jury should not be informed that a railroad employee was receiving RRB benefits since "the Supreme Court held that collateral source payments are inadmissible as bering on the extent or duration of disability in FELA cases." *Vanskike v. ACF Industries, Inc.*, 665 F.2d at 200 (citing *Eichel*, 375 U.S. at 255-56.) Indeed, in *Vanskike* the Eighth Circuit noted that evidence of collateral source payments are sometimes admissible at trial for the purpose of showing malingering, but whether the evidence is admissible is determined by applying a Fed. R. Evid. 403 balancing test. *Id.* But in FELA actions "[a] stricter rule is applied" as required by *Eicherl*. *Id.*

An excellent example of the application of *Eichel* by a district court is found in *Finley v. Consolidate Rail Corp.*, 1 F.Supp.2d 440 (E. D. Pa. 1998). The case involved a plaintiff bringing a FELA action where he claimed he suffered cognitive and psychological injuries as a result of being hit in the face and knocked to the ground by a window on a railroad car. *Id.* at 441. The plaintiff applied for and received a disability pension from the United States Railroad Retirement Board. *Id.* During opening statements, counsel for the railroad referred to Finley's eligibility for a disability pension, telling the jury that he could receive his full pension early if he was found to be disabled. *Id.* at 442. Plaintiff's counsel objected to the remarks and moved for a mistrial, arguing that evidence of his disability pension was inadmissible because its prejudicial effect outweighed the probative value. *Id.* In opposing the motion, the railroad argued that the evidence was not offered as evidence to mitigate damages or evidence of malingering on the plaintiff's part. *Id.* Instead, the railroad argued that the evidence was "admissible because the plaintiff made an admission in a vocational evaluation which is relevant to state of mind and as

3

an explanation of why he would make a claim of mental impairment and to show he in fact had none." *Id.* at 442.

The trial Court rejected the railroad's argument. It first noted that *Eichel* governs the admissibility of evidence of a disability pension. *Id.* at 443. The trial court next noted that evidence of receipt of collateral benefits by a plaintiff should be excluded "in both the damage and liability phases of trial". *Id.* (citing *Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 37 (1963)). Just as important, the trial court recognized that *Eichel* and its progeny does not permit a balancing-of-the-factors analysis under Federal Rule of Evidence 403, but must be categorically excluded. *Id.* Relying on these well established rules, the trial court granted the plaintiff's motion for a mistrial stating:

> The Court in *Tipton* indicated that statements about a Plaintiff's pension may not only affect the jury's award of damages but also its ultimate determination of the issue of liability. I find that liability is a very hotly contested issue in this case, and thus, I conclude that the opening statement of Amtrak made it highly likely and thus more than reasonably probable that the verdict would be influenced by the prejudicial statements. *Id.*

The trial Court went on to state that a curative jury instruction would not alleviate the prejudice to plaintiff, which would influence both offset of damages and liability. *Id.* at 444. In conclusion the trial Court stated that "[o]nce this prejudicial cat is out of the bag, it is difficult for a jury's verdict to be unaffected by this information." *Id.*

Plaintiff respectfully requests that the Court keep the proverbial cat in the bag, and exclude all evidence the Plaintiff received RRB sickness benefits or any other collateral source benefit.

II.   **PLAINTIFF IS NOT ELIGIBLE FOR FULL RETIREMENT BENEFITS AT AGE 62, BUT EVEN IF THIS WAS THE CASE, EVIDENCE OF AN EARLY RETIREMENT IS INADMISSIBLE AT TRIAL.**

4

Plaintiff is 60 years old and has worked for Defendant since about July 1987. Thus, he has about 23 years of service in the railroad industry. Under the RRB, a railroad worker is eligible to retire with full benefits after he or she reaches 60 years of age and has 30 years (360 months) of service. The retirement is not mandatory, and a work may continue to work. It is anticipated that Defendant will offer evidence and argue that Plaintiff would be eligible for early retirement at age 62 with full benefits. However, Plaintiff would only have 25 years of service in the railroad industry (if he was able to work) when he reaches age 62. Plaintiff would not receive a full pension and would loose or receive reduced insurance coverage if he retired at age 62. Accordingly, Defendant's anticipated evidence does not support its argument. But even if Plaintiff was eligible for full benefits or even reduced benefits at age 62, the evidence is inadmissible at trial. Like the evidence of Plaintiff's receipt of occupational disability benefits, evidence of his eligibility to retire at 62 is likely to be used in an unfairly prejudicial way against Plaintiff. Accordingly, Plaintiff requests that the evidence be excluded at trial. As discussed below, allowing evidence of retirement pension to limit Plaintiff's loss of future earning capacity, or any of his compensable damages, runs counter to the policies of *Eichel*.

It has long been settled that questions concerning the measurement of damages in actions brought under the FELA is governed by federal law. *Norfolk & Western Rwy. Co. v. Liepelt*, 444 U.S. 490 (1980). Under the FELA, an injured worker is entitled to recover all damages caused in whole or in part by the defendant's negligence. 45 U.S.C. § 51; *Rogers v. Missouri Pacific RR. Co.*, 352 U.S. 500 (1957). Damages recoverable in a FELA action include the reasonable value of medical expenses, both past and future; lost wages and earnings, and loss of earning capacity; and past and future pain and suffering. *Wiles v. New York, Chicago & St. Louis RR. Co.*, 283 F.2d 328 (3rd Cir. 1960), *cert denied*, 364 U.S. 900 (1960). The fact that an injured employee

5

may recover damages for loss of earning capacity, as opposed to lost wages, has been established under the FELA. *Id.* at 332. The central inquiry into a claim for loss of earning capacity is how the injuries and resulting disabilities and losses (i.e., job loss) will limit the plaintiff's economic horizons. *Id.* It therefore follows that railroad employees must be compensated for their loss of future earning capacity despite the fact that they are earning more at the time of trial then at the time they were injured. *Id.*

Under the common law "[i]mpairment to future earning capacity is measured by the reduction in the **value of the power to earn**, not the difference in earnings received for a specific occupation before and after an injury." 22 Am. Jur. 2d *Damages* § 142 (2003). The question central to Plaintiff's loss is whether his "economic horizons have been limited by his injury." *Wiles*, 283 F.2d at 332. Accordingly, whether Plaintiff may have been able to retire early due to an inheritance, savings, prudent investments or because he is eligible to receive a retirement pension associated with his railroad employment is irrelevant to his loss of earning capacity.

An example of the irrelevant nature of evidence of Plaintiff's receipt of money from other sources and its interplay with a claim for loss of earning capacity claim is a situation where a forty-five year old plaintiff received an inheritance or large sum of money, which potentially allowed him or her to retire. Evidence of the receipt of such money is irrelevant to that person's loss or impairment of general earning capacity. The person's wealth, from whatever source, is irrelevant to the issue of their impairment of earning capacity caused by the defendant. It is the capacity to earn that has been diminished and for which the law requires compensation.

Just as important, evidence of Plaintiff's eligibility for retirement at age 60 is also inadmissible at trial under the collateral source rule. It is a well-established rule of law that benefits received by a plaintiff from a collateral source may not be used by a tortfeasor to limit

damages otherwise recoverable by an injured party. *See Phillips v. Western Co. of North America*, 953 F.2d 923, 929 (5th Cir. 1993); *Griesser v. National Railroad Passenger Corp.*, 761 A.2d 606, 609 (Pa. Super. Ct. 2000); *Brumley v. Federal Barge Lines, Inc.*, 396 N.E.2d 1333, 1339 (Ill. App. Ct. 1979); *Norfolk Southern Ry. Corp. v. Tiller*, 944 A.2d 1272, 1288 (Md. Ct. Spec. App. 2008). It therefore follows that all such evidence is inadmissible at trial. Indeed, as discussed above, the Supreme Court made it clear in *Eichel* that evidence of receipt of RRB disability benefits is inadmissible at trial.

Any argument by Defendant that *Eichel* only prohibits the introduction into evidence of occupational disability benefits, but does not prohibit the introduction into evidence of a railroad worker being able to retire at age 62 is without merit. The argument limits *Eichel* too narrowly and ignores the policy behind the Supreme Court's decision. Courts that have considered the issue of whether an early retirement is admissible have uniformly held that such evidence is inadmissible under *Eichel*. For instance, in *Reed v. Philadelphia, Bethlehem & New England R.R.*, 939 F.2d 128 (3rd Cir. 1991), the Third Circuit, relying on *Eichel*, held that a FELA plaintiff's future entitlement to collateral benefits, just as his actual receipt of benefits, was inadmissible to challenge the extent or permanency of his disability. In *Reed*, the defendant railroad, despite a prior *in limine* ruling that disability benefits were inadmissible, was permitted to inform the jury that the plaintiff had received RRB disability payments. *Id.* at 133. The district court also allowed the defendant to present testimony that the plaintiff would be able to retire at age 62 with a full pension without any diminution in pay. *Id.* The defendant's counsel then argued during his closing that the plaintiff would have retired well before age 65 despite the plaintiff's claim to the contrary. *Id.* After the jury returned a verdict for the defendant, the plaintiff appealed, and the Third Circuit held that the district court committed reversible error

when it allowed evidence and arguments concerning an early retirement. In finding that the district committed reversible error, the court stated:

> [T]he situation is exacerbated because the same facts that the defense presented to the jury had been explicitly ruled inadmissible at an *in limine* hearing, a decision in accord with existing law. We concede that the continuing vitality of the collateral source rule has been challenged on the ground that its economic justification is marginal at best, but we cannot disregard the teachings of the Supreme Court in such cases as *Tipton v. Socony Mobil Oil Co., Inc.*, 375 U.S. 34 . . . (1963) and *Eichel* . . . .
>
> In *Eichel,* a FELA suit, the Court said that evidence of a disability pension was properly excluded. "[T]he likelihood of misuse by the jury clearly outweighs the value of this evidence . . . [P]etitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact." *Id.* at 255 . . . In *Tipton*, the Court rejected defense counsel's argument that because no damages were awarded, evidence of payments under the Longshoremen and Harbor Workers Compensation Act . . . was harmless error. 375 U.S. at 35 . . . The Court did not limit the application of the collateral source rule to the damage phase of the trial and noted that the jury was led to place undue emphasis on the compensation benefits in determining a liability issue, namely whether the plaintiff was a seaman under the Jones act.
>
> The situation here is somewhat different, but under the current state of the law we cannot say the error was harmless.

*Id.* at 134.

Similarly, other courts have reached the same conclusion as the Third Circuit in relying on *Eichel* for the rule of law that evidence of an early retirement and receipt of retirement pension is inadmissible at trial. *Page v. St. Louis Southwestern Rwy. Co.*, 349 F.2d 820, 821-822 (5th Cir. 1965)(Fifth Circuit held that introduction of FELA plaintiff's entitlement to railroad pension benefits to establish that he would have retired early regardless of his injuries warranted a new trial); *Brumley v. Federal Barge Lines, Inc.*, 396 N.E.2d 1333, 1339-1440 (Ill. Ct. App. 1979)(Jones Act plaintiff's right to railroad retirement and social security benefits was inadmissible to demonstrate his motivation to retire by age 65); *Griesser v. National Railroad Passenger Corp.*, 761 A.2d 606, 613 (Pa. Super. Ct. 2000)(Trial court committed reversible error

when it allowed the defendant railroad to present evidence of the possibility of a FELA plaintiff's early retirement); *Lee v. Consolidated Rail Corp.*, 1995 WL 734108 * 4-6 (E. D. Pa. 1995)(Trial court held that evidence of FELA plaintiff's entitlement to full retirement pension at age 62 was inadmissible collateral source evidence); *Norfolk Southern Ry. Corp. v. Tiller*, 944 A.2d 1272, 1288-89 (Md. Ct. Spec. App. 2008)(trial court properly excluded evidence at trial that plaintiff would be eligible to receive RRB retirement benefits after he turned 60 under the collateral source rule discussed in *Eichel*, which "has remained the gold standard for 45 years").

*Eichel* and its progeny reflect a strong policy against the admission of collateral source benefits. *Page*, 349 F.2d at 822. Underlying this strong policy is the concern that the admission of the collateral source evidence will inevitably impact the jury's determination on all aspects of the case including issues of liability and damages. *See Green v. Denver & Rio Grande Western R.R.*, 59 F.3d at 1003-1034("[t]he major reason for excluding collateral source evidence is the concern that juries will be more likely to find no liability if they know that [a FELA] plaintiff has received some compensation"). Accordingly, Plaintiff respectfully requests that all evidence of a possibility of retirement at age 62 be excluded in order to avoid the undue prejudice. The admission of any such evidence is clearly grounds for reversible error.

## CONCLUSION

Based on the foregoing evidence, law and arguments, Plaintiff respectfully requests that the Court exclude all evidence related to Plaintiff's receipt or potential receipt of RRB benefits.

HUNEGS, LeNEAVE & KVAS, P.A.

Dated: June 15, 2010          s/Cortney S. LeNeave
                              Cortney S. LeNeave, MN ID 018424X
                              Attorneys for Plaintiff
                              900 Second Avenue South, Suite 1650
                              Minneapolis, Minnesota 55402
                              (612) 339-4511